Case number 16-5234 Knapp Medical Center et al. Appellants v. Thomas E. Price in his official capacity as Secretary of Department of Health and Human Services et al. Mr. Ayers for the appellants. Mrs. Lopez for the appellee Thomas E. Price. Scarborough Appellee Doctors of Renaissance. Mr. Ayers, good morning. Good morning. May it please the Court, my name is Mark Ayers and along with my partner, Greg Marshall, we represent the appellants, Knapp Medical Center, McAllen Hospitals, and Cornerstone Regional Hospital. We're the plaintiffs in the action below. This action is a judicial challenge to the determination made by the Secretary, in particular CMS, to grant the request of Doctors Hospital at Renaissance to expand its current 551-bed hospital by 100%. Under the Affordable Care Act, such expansions by physician-owned hospitals are generally prohibited, but in that same act, Congress directed the agency to establish an expansion exception process by which CMS could grant exceptions to that prohibition under very specific requirements that Congress set forth in addition to other requirements that the agency might set forth pursuant to its rulemaking authority. Congress directed, and we think this is important, that that process be established and be ready to implement by February the 1st, 2012. And before the agency, the appellants responded that DHR did not satisfy the specific necessary requirements for an exception. Nonetheless, the agency granted DHR's request. Can I ask a very basic question? What's the jurisdictional grant here? Why should we be hearing this case? Well, a jurisdictional grant... What's the jurisdiction you've pled? We have pled the general jurisdiction over judicial review of a final agency decision under the APA as being arbitrary and capricious and not otherwise... Your subject matter jurisdiction, what's your theory? Our theory is that there's no preclusion to, I mean, other than... Are you here under 1331? Is this a federal question? It is, Your Honor. Okay. But now you've raised the potential statutory bar for the judicial review. Could you address that? Yes. I'm sorry I wasn't exactly stretching where you were at. But, yes, that is a federal question because we are claiming that you did not follow these very specific guidelines that are enshrined in federal law. The district court, when it dismissed the action, it did so based on, as Your Honor has pointed out, the judicial review provision at issue here, which on its face bars only challenges to the process, which is what it says, and does not expressly mention any bar of a challenge to any particular determination made under that process. That's parsing it pretty thin, isn't it, to say the determination is not part of the process? Well, actually, Your Honor, we do not. We don't think so. And this is one of the problems that's been in this case from the outset, is that the appellees have essentially started with the presumption that process includes individual determinations made under that process, but that's by no means a necessary implication at all. And, in fact, we believe that you wouldn't challenge the idea that the determination can't be challenged, right? Well, we are challenging the determination, and that's what this is. And the question ultimately is, does process in the judicial review provision include, necessarily include? I'm sorry. So your challenge is that your theory, the way you try and understand this statute, is that you're challenging the process went amiss somehow. Is that right, or what's the determination? I'm sorry. We're challenging specifically the CMS's determination as to whether DHR is entitled to an exception. Right, right. The challenge is truly a fact question. It's a fact fight about statistics and so forth, but only applies to these two parties, and so would have no impact. There's absolutely no challenge. I'm trying to understand how you get before us, in the light of the statute that says you can't, there's no administrative or judicial review of the process, right? Yes, Your Honor. Well, we start this analysis to answer that question with a strong presumption, as this Court and the U.S. Supreme Court have said many times, that Congress did intend judicial review of individual determinations. That's before we get to the statute. That's where we start. But we do have the statute, yeah. That's right. We have the statute, and so help me understand how you get around the statute, why the statute doesn't keep you out of the court. Under that presumption, the burden for the appellees, because they're the ones raising the judicial bar, is to demonstrate clear and convincing evidence, not that it's reasonably possible to read it to encompass individual determinations, but clear and convincing evidence that Congress does. Well, I want to know how you read it. I look at it, and I see you can't challenge the process, and that seems surprising to me to learn that the results of the process are not part of the process. Help me understand what I'm missing. Absolutely. Although it's important to remember, I mean, we see our burden as as long as it's a reasonable interpretation under the statute. Your burden right now is to answer my question about how does the statute, what are the determinations in that part of the process? All right. Well, we would say, first of all, process in the natural reading of it refers to procedure. That would be, that's kind of the root of the word process. But even more. Isn't the more normal way of precluding review of procedure to say that review of procedure is precluded? Well, I. The process suggests to be something going beyond in some way, maybe disputable what way, going beyond pure procedure. It depends on the context, of course. Exactly. And we think the context, Your Honor, is very important. We think that. What is it in the context here that points towards your narrow reading of process? Well, Your Honor, and, of course, this Court and the Supreme Court says that we are to read these judicial review provisions narrowly. That's very clear. But I would point to. And that doesn't sweep all context and all language aside. Not at all. And we think the direct context here, contrary to the Appley's assertions that Congress did not define what they meant by process, we think they absolutely did right there in the statute. And when they did that, that's 1395 NNI 3A. And it even gives a separate heading entitled process. Well, let me ask you this. Before we get to context, let's look at the language. It's just not process. It's process under this paragraph. And I read paragraph to refer to A, I mean, to 3, which has six paragraphs, A, B, C, D, through clarification. Or through, I'm sorry, through G. Because if you look at the limitation on review, it says, or otherwise, of the process under this paragraph. Now, it can't be that A is the paragraph referred to because I, which has the limitation on review is a in peri material, whatever, a subparagraph. And A is the paragraph they're talking about, which has not only, unfortunately, A, which is denominated process, but B, C, D, all the way through, which does set out what the eligible hospitals are, the two classes, the data, and so forth. The only problem with that reading, because I do think you have to give meaning to under this paragraph, is to figure out what paragraph they're talking about. And then, unfortunately, they use process to mean something more limited as well. Well, Your Honor, I don't know that there's any clear and convincing evidence that they use process. Well, what do you think under this paragraph refers to? I don't know that there's really been any dispute, Your Honor, that under this paragraph is referring to this. A rather than three? Well, that it encompasses, when it says the process, it's referring to exactly what it had just defined above the process. It would be, we think. But it says under this paragraph. Then it can't be, paragraph can't refer to A because under this paragraph would mean under I. Your Honor, I don't know that under this paragraph, again, is the determinative factor. I think, ultimately, the question here is the process. Another way of putting Judge Henderson's question is, here is this thing at the end of the accumulation of subsection three, sub, sub, subsection three. And it seems an odd way to confine review of process, which is entirely in capital A, to put that at the whole end of subsection three. Doesn't it? I mean, that just seems a peculiar placing. No? If all they want to do is preclude review of procedure. Well, my time has expired. You're always allowed to answer a question if you have an answer. Right. Well, Your Honor, I don't know that that placement, again, what we're looking for is clear and convincing evidence as to what Congress intended. Whether they intended to limit something broader, does process actually include individual determinations? I don't know that the placement of the paragraph can subsume the whole question about what, when they specifically call something process, here's the process, we want this process to be established and put forth. And then down here it says, we don't want any review of the process. I think the only reasonable interpretation is to say, well, that's the process that they just defined clearly as a set of procedural steps in the provision above. Okay. We'll give you some time to reply. Ms. Lopez? Ms. Lopez? Sorry, it took me a while to get this down to my head. May it please the Court, Caroline Lopez, on behalf of the government, we agree that Congress used the term process under this paragraph as a statutory term of art that sweeps in everything that's been described in paragraph three. And paragraph three includes absolutely everything in the exception application process. And so that begins in subparagraph A, which we've just been talking about, and it sounds like you're all very well versed and don't need to look back at the particular statutory language. I mean, it is a fair point, isn't it, that process here could be a cross-reference to process in capital A. It cannot be so limited to the process in subparagraph A because it says not process under subparagraph A. It says process under this paragraph. And process under this paragraph means process under paragraph three. And that, for example, is in contrast to other places in the statute where they do cross-reference process under subparagraph A. So in the preclusion of review provision, they use the broader process under this paragraph. And process under this paragraph means paragraph three. And if we walk through the scope of paragraph three, remembering that the preclusion of review paragraph comes at the very end and sweeps in everything that was discussed before. In subparagraph A, so we're at the bottom of plaintiff's addendum 4A to 5A. So at the very top of 5A, for example, the process includes both, quote, instructions that the secretary shall promulgate regulations to carry out the process. And so just to pause there, regulations and process can't be completely coterminous. They've got to mean something different. And then the secretary also has to be ready to implement those regulations. And then if we flip all the way to plaintiff's addendum 7A, subparagraph H, which is in the middle of that page, refers to as part of that overall process that's being described in paragraph three, refers to the publication of final decisions. And so that makes crystal clear that the process of applying for exceptions and being either granted or denied those exceptions that's been described over paragraph three includes as well that final decision is the final step of the process. If you're right, what remedy is there for someone who has been mistreated? A hypothetical. I'm imagining a hypothetical where an applicant has been unlawfully denied an exemption. What are they supposed to do? Congress has weighed the costs and benefits of allowing any sort of more input into the process and the opportunity for both the applicant and those in the community to comment on that particular application, and Congress decided, and it makes sense here, Congress decided that once CMS has actually made that determination under the process with that opportunity for comment and back and forth, that the costs and benefits balance out but it makes sense for there to be no additional judicial or administrative review of that decision. No due process claim, no ultra-virus claim? To be clear, there's no true due process claim, no ultra-virus claim here. I'm talking about just trying to understand how the statute works. No, the government is not arguing that if there were a true constitutional claim that isn't sort of just a dressed-up garden variety APA claim that this would preclude review in those cases. And ultra-virus, to follow up that aspect of Griffith's question, what about a claim that the decision was ultra-virus? Again, I just want to make very clear here that there's no such claim that this fits into that narrow category of ultra-virus decisions, ultra-virus actions, and the government is not arguing that in the very limited circumstance in which there were truly ultra-virus action, there may be some non-statutory review. But as the district court correctly found here, that's just not an issue in this case, and the court doesn't need to decide that here. Are you differentiating between some entity like DHR, which is the actual applicant being denied an application, and NAP, which is just challenging the grant of the application? Are you differentiating? No. So the preclusion of review would apply both whereas here to disappointed competitors, which makes sense. It prevents litigation delays once CMS has made a decision. But it also would apply to a disappointed applicant, and that, too, makes sense of the statutory structure because once CMS has made a decision about a particular application, there's a two-year moratorium on being able to apply again, and so that, too, indicates that Congress really meant to leave it in CMS's hands and not to allow litigation delays one way or the other once a decision has been made. If there are no further questions, the government rests on its brace. All right. Thank you. Mr. Scarborough? Do you agree if your client had not got the exception, you'd have no judicial review? Yes, Your Honor. We would be a river without a paddle at that point. Your Honor, I'm here on behalf of FLE Intervenor Doctors' Hospital at Renaissance. Judge Williams, I wanted to address the question that you raised to my colleague about what is the context for this no-preclusion review. And the context is this, that when a patient needs advanced trauma care, every minute matters. And unfortunately for people who live in medically underserved areas, they don't always have access to the care that they need. And trauma patients, particularly those in South Texas, have to travel great distances to get the care. And that can have life-or-death consequences. But you answered affirmatively to the question from Judge Henderson that if your application had been denied, you wouldn't have a chance. So those trauma patients would be out of luck. That is correct, Your Honor. But because we met the statutory criteria that Congress laid out, Well, that's assuming a conclusion that we cannot assume. Well, Your Honor, under the statutory regime that Congress set out, it said there would be no expansion unless you met certain qualifications, for an exception. Congress made it clear, though, that in order to speed care to these areas, that those decisions, good, bad, or otherwise, would not be subject to review. And it made clear when it used the word not just process, but it also talked about the establishment of the process. Congress made it clear that there was a two-pronged approach. So in Phase 1, Congress indicated that that process had to be established, regs had to be promulgated, by the beginning of 2012. But where we part ways from appellants is we don't believe that Congress's desire to avoid delay and to make sure that care was given to needed areas suddenly stopped at February of 2012. Because the instruction in the statute was to implement and carry on, into the present, off into the future, this process. The process includes both the application, as well as carrying all the way through to the final decision. And we know that, as my colleague just pointed out, because subsection H of this paragraph refers to the final determination that would be published. And that's why when Judge Collier below was addressing these questions, she looked to the guidance that came from Texas Alliance and from Florida Health Sciences, and realized that you could not separate the decision that was reached from the process that was followed to reach that decision. In some respects, we do. There are some cases where a party's chance to challenge procedures, for example, by which the regulation was adopted and passed, but the party is nonetheless able to challenge the substance of decisions emerging from this, by hypothesis, possibly defective process. Your Honor, when Congress laid out the provision here, they said there would be no administrative or judicial review. And the reason why we know that this ultimately applies to every step along the way, including the final decision, is because there would have been no reason to even talk about precluding administrative review of the process and the establishment of the process. Because an agency can never review the establishment of its process. It goes through a normal notice and comment rulemaking, and then that process is established. There's never an administrative review of that piece of it. I noticed that argument, but I honestly didn't get it, because it seemed to me that the fault with the agency can't review itself. If we're talking about a decision made at the top level in the agency, substantive, procedural, whatever, there's no possibility of the agency reviewing it. It could reconsider it, I guess. Obviously, there would be the possibility for reconsideration, and the appellants in this case went outside the process to actually submit additional comments and rebuttals to the response that Doctors Hospital provided. Taking all of that into account, the secretary on behalf of CMS reached a decision, and that decision is not, Congress made it clear that it's not subject to second-guessing and review. We raised a separate argument that I won't get into just because of my limitation on time with regard to standing, but we believe that even if there were judicial review available here, that the appellants lack the standing that would be permissible to bring this claim, and we'll rest on the papers for that unless there are other questions. I have one. You don't cite Monmouth Medical Center. Are you familiar with that holding from our court that Judge Williams wrote? Unfortunately, I'm not, Your Honor. All right. Well, it has to do with whether Mandamus would be, if you were a disappointed applicant, whether Mandamus would be available to you. It's very specific on its facts, but... Generally speaking, with regard to the availability of Mandamus in this circumstance, the no-review provision that Congress provided includes the language, or otherwise, which arguably would encompass and sweep in the Mandamus issue with regard to no review. We do agree, though, that if the agency had acted ultra vires, that that is the safety valve here, that there would always be the ability of a court to come in and check an agency that is acting without any authority. All right. Thank you. Does he have any time left? All right. Why don't you take a minute? Thank you, Your Honor. Just a couple of quick points. First, just as a meta point, under the Kekana decision, Supreme Court's Kekana decision, and this is consistent with this Court's decisions as well in Texas Alliance and Florida Health, if what it comes down to is a battle between reasonable and competing interpretations, then you must adopt that interpretation that allows for judicial review under the strong presumption. We would assert that it is not the lesson of Texas Alliance and Florida Health that you can never separate the process from the ultimate decision. That depends on how it's written. What Texas Alliance and Florida Health say is that when you have, first you look at the nature of the challenge, and if that type of challenge is not expressly mentioned in the judicial review provision, like financial standards were not expressly mentioned in Texas Alliance or data was not expressly mentioned in Florida Health, then... What is the type of challenge that you imagine is not permissible under this provision? The type of challenge would be challenges to the face of the process, and there's any number of those that could be brought, that the various elements of the process, the timing standards, the filing requirements, so forth, the time for rebuttal, various other components are arbitrary and capricious, don't give enough time, they're based on the wrong data. There's any number that you could bring to the face of the process. There's also any number of challenges that you could bring to the establishment of the process. It wasn't done properly under the notice and comment rules of the APA. So those distinctions are well established and not a problem. With regard to the administrative question, that, well, the statute also precludes administrative review, and that seems superfluous. As we said in our briefs, well, even if there is not generally review of an agency reviewing its own rules, for example, that doesn't preclude anything, as this court said in Florida Health. But oftentimes Congress uses language that is technically unnecessary in order to make assurance double sure. And here there's any number of reasons why Congress might have also said administrative in the judicial review provision. It might have wanted to make sure that everyone was on notice, don't try to get creative, don't bring something in front of the agency challenging the process, because we are very concerned that that process be set in stone as of February 1, 2012. We don't want any question marks regarding that. People can be very creative. They can file whatever they want, as we all know. Also, they might have wanted to capture any future possible statutory avenues that might come along that would allow an administrative review of such a rule or procedure. And furthermore, in the judicial review provision itself, there's evidence that Congress is simply speaking broadly even though using technically unnecessary terms. It's referenced to 1395 FF and 00. That has to do with appeals from individual benefits determinations under Medicare and service provider reimbursements. There's no possible way that an expansion exception could fit under either of those. And so there was absolutely no need for Congress to use that language either. But as far as the paragraph is concerned, if you look at the different components of the statute, each one references the process. So when it talks about under this paragraph, we believe that's talking about the whole of paragraph 3. But that doesn't mean that the process is not, in fact, the process. It's the process and the various components of it. But there's a clear distinction between an attack on the process and an attack on the determination. We assert that our interpretation of this is more than reasonable, and ask that this Court reverse the trial court's decision. Thank you.
judges: Henderson, Griffith, Williams